**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**MARY D. LUCERO,**

    **Plaintiff,**

**vs.**                                                                                                                  **Civ. No. 08-868 RLP**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for supplemental security income ("SSI" herein). Plaintiff has moved this court for an Judgment reversing the decision of the Commissioner, or alternatively, remanding this case for rehearing. (Docket No. 14). This matter has been fully briefed by the parties. For the reasons stated herein the decision of the Commissioner is Reversed in part, and this matter is Remanded for additional proceedings consistent with the Memorandum Opinion and Order.

**I.      General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. **Glenn v. Shalala**, 21 F.3d 983, 984 (10th Cir.1994). Substantial evidence requires more than a scintilla, but less than a preponderance of the evidence, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether

substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. **Ray v. Bowen**, 865 F.2d 222, 224 (10th Cir.1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. **Graham v. Sullivan**, 794 F.Supp. 1045, 1047 (D.Kan.1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. **Glenn**, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the

claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. **Barnhart v. Thomas**, 540 U.S. 20, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333 (2003).

The claimant bears the burden of proof through step four of the analysis. **Nielson v. Sullivan**, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. **Nielson**, 992 F.2d at 1120; **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir.1993). The Commissioner meets this burden if the decision is supported by substantial evidence. **Thompson**, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

**II.     History of case**

The administrative law judge ("ALJ" herein) issued his decision on March 21, 2008.  (Tr. 11-20).  Plaintiff alleges disability beginning June 13, 2003. (Tr. 98).  Plaintiff filed her application for SSI benefits on July 14, 2005.   Id.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Tr. 16).  At step two, the ALJ found that

Plaintiff has severe impairments of gout and arthralgias/myalgias, and non-severe impairments of exogenous obesity and affective disorder. Id. At step three, the ALJ determined that Plaintiff's impairments do not meet or equal a listed impairment. Id. After establishing Plaintiff's RFC, the ALJ determined at step four that Plaintiff had no relevant past work. (Tr. 19). At step five the ALJ determined that Plaintiff retained the RFC for several jobs which existed in significant numbers in the regional and national economy.[1] Therefore, the ALJ concluded that Plaintiff was not disabled (Tr. 20).

### III.     Did the ALJ err by failing to include the entire administrative record?

In a social security disability case, the court has the duty to meticulously examine the record and determine on the record as a whole whether the Commissioner's factual findings are supported by substantial evidence and whether the Commissioner applied correct legal standards. **Pace v. Shalala**, 893 F.Supp. 19, 20 (D.Kan.1995). The entire administrative record is a necessary part of appellant's record on appeal. This area of law is fact-specific and our standard of review is deferential to the Commissioner; therefore, the complete administrative record is required whether appellant argues that the findings are not supported by substantial evidence or that incorrect legal standards were applied. **Goatcher v. United States Dep't of Health & Human Services**, 52 F.3d 288, 289 (10th Cir.1995). A court has the authority to remand a case for further consideration if unable to exercise meaningful or informed judicial review because of an inadequate administrative record. **Harrison v. PPG Industries, Inc.**, 446 U.S. 578, 594, 100 S.Ct. 1889, 1898, 64 L.Ed.2d 525 (1980).

---

[1] Cleaner/polisher, DOT 709.687-010, 43,000 in the national economy, 450 in New Mexico; Laundry folder, DOT 369.687-018, 50,000 in the national economy, 1,100 in New Mexico; Small produce assembler, DOT 706.684-011, 145,000 in the national economy, 2,000 in New Mexico. (Tr. 20, 408).

The administrative record in this matter contains a letter dated September 18, 2007 from Plaintiff's counsel to the ALJ. (Tr. 345-346). The letter states that it encloses additional medical records, including records from Victory Personal Care, Inc. (3 pages) and from El Centro Family Health Clinic/Health Centers of Northern New Mexico dated 12/13/06-8/29/07. (36 pages). None these records are contained in the administrative record.

On the top of the counsel's letter, there is a hand written notation which states: "SCHD-1876-9/20/07-JEG-LV-"p" 1 p.m." (Tr. 345). Although the court can not interpret the entire hand written entry, I note that it is consistent with the date and time of Plaintiff's administrative hearing.[2] Also missing from the administrative record is Tr. 394, the first page of the hearing transcript. It is apparent from the following page of the transcript that the missing page included some discussion of the exhibits that were admitted into evidence.

Plaintiff testified at her administrative hearing that she was receiving the services of a home health care aide for 24 hours a week though Victory Personal Care, and that she qualified for these services because "my doctor signed the paper. He had to fill out a paper and they put down the fibromyalgia and living with chronic pain and I got approved with that." (Tr. 401). She identified that doctor as Dr. Stengel. Id. There are no records from Dr. Stengel in the administrative record. Since 36 pages of records from El Centro Family Health Clinic/Health Centers of Northern New Mexico are missing from the record, the court can not rule out the possibility that Dt. Stengel is a treating physician, whose opinions would be entitled to deference  if well supported and not inconsistent with other substantial evidence of record.  **Castellano v. Secretary of Health and Human Services**, 26 F.3d 1027, 1029 (10th cir. 1994); see § 416.927(d)(2). The ALJ refers to two

---

[2] The last page of the transcript indicates that the hearing terminated at 1:30 p.m. on 9/20/07  (Tr. 410).

medical reports which may have been included in the missing records, an MRI dated April 26, 2007, and an August 28, 2007 statement by Plaintiff that physical therapy was helping and her back was less painful. (Tr. 18). Again, these records are not contained in the administrative record.

Given that the administrative record must permit meaningful judicial review, that the ALJ's findings were derived in part from information which the Commissioner failed to include in the record, and that opinions which might be entitled to deference are not before the court, I find that I cannot conduct the meticulous examination of the record required by law. Therefore, this case should be remanded in order for the Commissioner to include in the record complete copies the medical records submitted to the ALJ in Plaintiff counsel's letter of September 18, 2007.

**IV.     Did the ALJ err by failing to obtain a consultative psychological/psychiatric examination?**

Medical records indicate that Plaintiff had been prescribed anti-depressant medication as early as February 2004. (Tr. 136). In September 2004 she was diagnosed as suffering from anxiety and depression, however it was also noted that she had not been taking her antidepressant, Zoloft. (Tr. 336). At a subsequent evaluation in December 2004 she stated that she had quit taking Zoloft a month before. (Tr. 322). In January 2005 Plaintiff was seen at Cogdell Rural Health Care. The care provider noted a brief psychological evaluation, "recent and remote memory intact; no SI, good insight and judgement. Appropriate affect." (Tr. 321). She was referred to a medical assistance program for help in paying for medications. Id.   As of February 2005 she had not followed up on this referral, and stated she did not want to take Zoloft. (Tr. 304). Later that month a neuro-psych screening at an emergency room noted that she had normal mood and affect. (Tr. 308). Plaintiff was seen by medical providers numerous times over the next ten months, but none diagnosed

depression.[3]  (Tr. 246-248, 287-298, 279-280, 263-277, 237-238, 163-169, 156, 176-187, 152-155, 128, 160-162).

Plaintiff was evaluated by Martin Trujillo, M.D., on December 6, 2005, at the request of the Disability Determination Unit.  Dr. Trujillo noted that Plaintiff's primary care provider had prescribed Zoloft for treatment of depression associated with chronic pain.  While Dr. Trujillo's evaluation focused on Plaintiff's physical condition, he noted no abnormalities related to her mental status.  (Tr. 143-145).

A state agency physician prepared a Psychiatric Review Technique Form, dated December 14, 2005.  (Tr. 219-232).  The physician concluded that Plaintiff's mental impairment of affective disorder was not severe, and supported this conclusion with a detailed explanation. [4] (Tr. 219).

Thereafter Plaintiff had numerous medical encounters.  She was seen by her podiatrist on three occasions from December 15, 2005 to February 9, 2006 for treatment of foot pain.  (Tr. 133-135).  She was seen on three occasions at Health Centers of Northern New Mexico, December 15, 2005, January 5, 2006 and January 13, 2006.  (Tr. 149-151).  Her mental/emotional state was not

---

[3]At a July 12, 2005 visit to Health Centers of Northern New Mexico, Plaintiff was noted as unkempt, and very apathetic.  She stated that she had no motivation to try suggested treatment modalities for fibromyalgia.  She was treated at that time with antibiotics for  suspected pelvic inflammatory disease.  Depression was not diagnosed or noted.  (Tr. 237-238).

[4]"Clmt is a 63 (sic, Plaintiff's date of birth is 3/5/69) yo female w/ allegations of arthritis, gout, LBP, fibromyalgia, and depression.
   "Clmt's (sic) has diagnosis of fibromyalgia. Clmt's physical PCP is treating her with Zoloft for some depressive sxs associated with chronic pain.  The clmt has not been referred, nor treated, by psychiatrist/psychologist.  Clmt has no h/o hospitalizations for a mental impairment.
   "Clmt's function report reveals limitations due to physical impairments.  Clmt notes she "panics" at times.  Her husband confirms this in the third party function report.  However, both clmt and her husband indicate that the clmt does some cooking, shops, visits w/ family, goes fishing, listens to music, and enjoys watching TV.
   "Clmt has sxs of depression, but they appear to be related to physical diagnosis of Fibromyalgia.  Clmt's mental impairment is non-severe at this time." (Tr. 231).

discussed, other than a comment on January 13, 2006 that she "has been in counseling." (Tr. 149).

Plaintiff was admitted to the emergency room at Alta Vista Regional Hospital on ten occasions between January 7, 2006 and August 23, 2007for treatment of various complaints.[5] At no time did any medical providers diagnose or even suggest she suffered from depression.

The ALJ has considerable discretion to procure consultative examinations. **See Diaz v. Sec'y of Health & Human Servs**., 898 F.2d 774, 778 (10th Cir.1990). The ALJ's duty to order a consultative examination is triggered when the plaintiff has advanced evidence "sufficient to suggest a reasonable possibility that a severe impairment exists," **see Hawkins v. Chater,** 113 F.3d 1162, 1167 (10th Cir.1997). "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." Id. at 1168.

Based on the record before this court, I find that the ALJ did not have a duty to procure a consultative psychiatric or psychological examination. However, I can not evaluate those portions

---

[5] 1/5/06: generalized abdominal pain due to possible mild paralytic ileus. (Tr. 191-201).

12/8/06: Anxiety attack brought on by family argument. Depression denied, affect noted as normal and appropriate for age. (Tr. 389-391).

1/5/07: low back pain attributed to acute muscular spasm and acute lumbar myofascial strain. (Tr. 383-385).

3/11-12/2007: Sore, aching pain in the back, neck, chest and legs attributed to myalgias consistent with fibromyalgia or early viral syndrome. She was noted to be anxious, but with normal behavior for her age and situation. (Tr. 380-382).

4/17/07: Lower back pain with mild anxiety. (Tr. 374-379).

4/29/07: Low back pain attributed to acute sciatica. (Tr. 371-373).

4/30/07: Foot and back pain. Plaintiff appeared mildly anxious. X-ray indicated a small bone spur. Plaintiff "refused to give a urine specimen and left the er threatening to shoot all the bitches in there." (Tr. 366-369).

5/9/07: Foot pain. (Tr. 363-365).

6/9/07: Atraumatic chest pain with anxiety, attributed to bronchitis, chest wall pain and tobacco use. (Tr. 358-362).

8/23/07: Nausea and vomiting with moderate anxiety. Her behavior was noted as appropriate for her age and situation. (Tr. 354-357).

of the record not contained in the administrative record.  Because this case must be remanded so that the missing records may be included, I direct that on remand the ALJ consider what, if anything, in those records impacts on the evaluation of Plaintiff's mental status and whether the information in those records  indicate the need for a consultative examination.

**V.        Did the ALJ err in evaluation of Plaintiff's credibility?**

An ALJ's credibility determinations are generally treated as binding on review. **Talley v. Sullivan**, 908 F.2d 585, 587 (10th Cir.1990). "Credibility determinations are peculiarly the province of the finder of fact." **Diaz v. Sec'y of Health & Human Serv**., 898 F.2d at 777. Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." **Casias v. Sec'y of Health & Human Serv**., 933 F.2d 799, 801 (10th Cir.1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." **Huston v. Bowen**, 838 F.2d 1125, 1133 (10th Cir.1988).

The ALJ discounted Plaintiff's credibility for the following reasons:

a) Plaintiff's lack of motivation to try therapies suggested by her physician indicating that her pain and limitations are not as severe as she has attempted to portray them. (Tr. 18, referring to Tr.238)

b) The lack of trigger points.  (Tr. 18, referring to 143-144)

c ) Objective medical testing at time of consultative examination that was at odds with behavior, specifically, Plaintiff moaned, groaned and winced at the examination but had full range of motion of all extremity joints, could squat 80% - full,  normal grip strength and gait, no significant synovial thickening or joint edema, no motor or sensory deficits of the upper and lower extremities, a  negative straight leg raise, and

    normal x-rays. (Tr. 18, referring to 143-144).

 d) Plaintiff's failure to adhere to the treatment schedule for addressing neuroma pain. (Tr. 18, referring to Tr.134).

 e) Plaintiff's daily activities which include driving, shopping, preparing meals, performing household chores. (Tr. 19, referring to Tr. 108-114).

 The ALJ's rejection of Plaintiff's credibility is not contrary to law, was based on substantial evidence and should be upheld.

 **IT IS THEREFORE ORDERED** that Plaintiff's Motion seeking reversal and remand is Granted in part and Denied in part.

 On Remand, the Commissioner, though his ALJ, will locate, or obtain the records presented to the ALJ in Plaintiff's Counsel's letter of September 18, 2007. Those records shall be made part of the administrative record.

 The Commissioner, through his ALJ, shall address any opinions expressed by Dr. Stengel, determining whether he is a treating physician, and whether his opinions are entitled to deference.

 The Commissioner, through his ALJ, shall also address whether the information contained in the records presented to the ALJ in Plaintiff's Counsel's letter of September 18, 2007 indicates the need for a consultative examination, and if so, shall obtain such an examination.

 Finally, Plaintiff originally alleged a date of onset of disability of June 13, 2003. Plaintiff now suggests that she experienced a drastic decline in health on or about July 18, 2007, and that the ALJ could determine that she was disabled as of that later date. (Tr. Docket No. 16, p. 3). Accordingly, the ALJ shall evaluate the record pursuant to the criteria established in **Social Security Ruling 83-20**, 1983 WL 31249, to determine whether a subsequent date of onset applies.

**IT IS SO ORDERED.**

_____
RICHARD L. PUGLISI
United States Magistrate Judge
(sitting by designation)